## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on July 24, 2024**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Criminal No. 1:24-cr-281 (APM)** |
| | **VIOLATIONS:** |
| **v.** | |
| **DANA GARNETT, and** | **Count 1: 18 U.S.C. § 371 (Conspiracy)** |
| **YELAKE MESERETU,** | |
| | **Counts 2-6: 18 U.S.C. §§ 201(b)(2) & 2 (Bribery)** |
| **Defendants.** | |
| | **Counts 7-16: 18 U.S.C. §§ 1343 and 1346 & 2 (Wire Fraud)** |
| | **FORFEITURE:** |
| | **18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)** |

## SUPERSEDING INDICTMENT

The Grand Jury charges that, on or about the dates and times stated herein, at all times material to this indictment:

## GENERAL ALLEGATIONS

1.     Defendant DANA GARNETT, a resident of Maryland, worked as a Contract Specialist for the District of Columbia Public Schools (DCPS) Office of Chief Business Officer in the Contracting and Acquisitions Division, a part of the Central Office of DCPS. GARNETT's responsibilities included reviewing contracts and acquisitions across all of the DCPS. As part of her duties, GARNETT managed various programs through which DCPS school campuses purchased supplies, including the American Express Buy Down Program (AmEx Program). As a DCPS Contract Specialist, GARNETT was a public official; that is, she acted for and on behalf of the District of Columbia in an official capacity.

2.      Defendant YELAKE MESERETU, a resident of Maryland, owned and operated a D.C.-based company, Sky LLC, doing business as US Office Solutions (US Office), that did business with the D.C. government, including providing supplies to DCPS. US Office was an approved vendor on the D.C. Supply Schedule, which allowed DCPS to use government-issued credit cards (purchase cards) to buy goods from US Office. As described below, US Office also became an approved vendor with the AmEx Program.

3.      Patricia Bailey (Bailey), a resident of Maryland, worked as a DCPS Administrative Officer at the Cardozo Education Campus (Cardozo), one of the satellite campuses of DCPS. As an Administrative Officer, Bailey was responsible for managing Cardozo's budget for supplies, including classroom supplies, technology supplies, and office and maintenance supplies. Bailey was also responsible for selecting and awarding contracts to vendors to provide supplies to Cardozo, placing orders with those vendors, and confirming deliveries and approving invoices for payment.  Bailey procured supplies for Cardozo by issuing purchase orders and by utilizing a purchase card issued to Bailey by the D.C. government. Bailey also purchased supplies through the AmEx Program. As a DCPS employee, Bailey was a public official.

4.      Donald McWhirter (McWhirter), a resident of Maryland, owned and operated a D.C.-based company, General Merchandise Supplies Unlimited LLC (General Merchandise), that did business with the D.C. government, including providing supplies to DCPS. Like US Office, General Merchandise was an approved vendor on the D.C. Supply Schedule, as well as an approved vendor with the AmEx Program.

5.      Duane King (King), a resident of Maryland, owned and operated a Maryland-based company, American Business Supplies, LLC (American Business), that did business with the D.C. government, including providing supplies to DCPS. Like US Office and General Merchandise,

American Business was an approved vendor on the D.C. Supply Schedule, as well as an approved vendor with the AmEx Program.

6.      The AmEx Program was a catalog ordering program established to streamline purchases by DCPS procurement officials of office, custodial, and educational supplies, as well as technology and specialty goods, from participating vendors. In order for a company to provide supplies to DCPS through the AmEx program, it first had to obtain authorization as an approved vendor.

7.      As public officials and employees of DCPS, GARNETT and Bailey had a lawful duty to perform their responsibilities consistent with, among other thing, the Code of Official Conduct. The Code of Official Conduct prohibited GARNETT and Bailey from, among other things: (1) receiving any compensation, salary, or contribution to salary, gratuity, or any other things of value from any source other than the District of Columba government for their performance of official duties; (2) soliciting or accepting, either directly or indirectly, any gift from a "Prohibited Source"; (3) receiving anything of value in return for being influenced in the performance of official acts; and (4) disclosing or using confidential or privileged information acquired by their position without authorization.

8.      The Code of Official Conduct defined a "Prohibited Source" as any person or entity that, among other things "has or is seeking to obtain contractual or other business or financial relations with the District Government."  MESERETU, McWhirter, King, and their respective companies constituted "Prohibited Sources" as defined in the Code of Official Conduct.

## COUNT ONE
### (Conspiracy - 18 U.S.C. § 371)

### THE CONSPIRACY AND ITS OBJECTS

9.      Paragraphs 1 to 8 are incorporated herein.

10.    Beginning at least as early as June 11, 2019, and continuing through at least August 2023, within the District of Columbia and elsewhere, the defendant,

**DANA GARNETT,**

together with Patricia Bailey and others, including vendors MESERETU, McWhirter, and King, did knowingly and unlawfully conspire, confederate, and agree with each other to commit an offense against the United States, that is:

a.    For GARNETT and Bailey, being public officials, to directly and indirectly, corruptly demand, seek, receive, accept and agree to receive and accept anything of value personally, in return for (i) being influenced in the performance of an official act, (ii) being induced to do and omit to do any act in violation of their lawful and official duty, (iii) being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States; that is, GARNETT and Bailey demanded, sought, received, accepted, and agreed to accept money from vendors doing business with DCPS and in exchange GARNETT and Bailey awarded DCPS business to these vendors, facilitated their entry into DCPS's AmEx Program, and committed fraud against the United States by arranging for DCPS to pay for supplies ordered from vendors, that the vendors did not deliver, in violation of Title 18, United States Code Section 201(b)(2).

b.    For the vendors to directly and indirectly, corruptly give, offer, and promise anything of value to a public official (i) to influence that public official in the performance of an official act, (ii) to induce that public official to do and omit to do an act in violation of the lawful and official duty of that public official, and (iii) to influence such public official to commit or collude in, or allow, or make opportunity for the commission of any fraud on the United States; that is, the vendors, gave, offered, and promised money to GARNETT and Bailey, both public

4

officials with DCPS, to induce GARNETT and Bailey to award business to these vendors, to facilitate their entry into DCPS's AmEx Program, and to commit fraud against DCPS by arranging for DCPS to pay for supplies ordered from vendors, that the vendors did not deliver, in violation of Title 18, United States Code, Section 201(b)(1); and

> c.      to devise and intend to devise and execute a scheme and artifice to defraud the District of Columbia of money and property, and to defraud and deprive the District of Columbia, DCPS, and District citizens of the honest services of GARNETT and Bailey, both public officials, through bribery and kickbacks, in violation of Title 18, United States Code, Sections 1343 and 1346.

### Purposes of the Conspiracy

11.     It was a purpose of the conspiracy for GARNETT and her coconspirators, including the vendors, to use GARNETT's and Bailey's official positions with DCPS to unjustly benefit and enrich themselves through bribery, kickbacks, and fraud.

### Manner and Means

12.     The conspiracy was carried out through the following manner and means, among others:

### Overpayment and Under Delivery of Supply Orders

13.     GARNETT and Bailey awarded DCPS contracts to and ordered supplies from vendors doing business with DCPS. In doing so, GARNETT and Bailey, using their official positions, issued DCPS purchase orders; charged DCPS purchase cards; falsely certified receipt of things and approved DCPS payments; and used the DCPS AmEx Program to facilitate orders of supplies.

14.     Instead of fulfilling the contracts and orders in full, in coordination with GARNETT and Bailey, the vendors arranged to deliver fewer quantities of supplies than listed on contracts and orders they had been awarded, or to deliver no supplies at all.

15.     GARNETT and Bailey, using their positions at DCPS, ensured that DCPS paid the vendors for the full amount of supplies listed on the orders even though, as GARNETT, Bailey, and the vendors were aware, a lesser amount of supplies were delivered to DCPS.

16.     GARNETT and Bailey approved fraudulent invoices and falsely certified that the vendors had completed the full orders.  As a result, DCPS paid the vendors for supplies that had not been delivered.

17.     In return, the vendors provided some or all of the fraudulent overpayments made by DCPS to GARNETT and Bailey in cash or other payments, as kickbacks. The vendors also kept a portion of the proceeds of the scheme for themselves.

18.     In order to coordinate the delivery of cash payments, GARNETT and Bailey sent text messages and made phone calls to the vendors to arrange times and meeting locations to drop off the cash payments. In some instances, GARNETT and Bailey met with the vendors at their business locations in D.C. to receive the cash payments.

19.     During the course of the conspiracy, the vendors also made additional payments to GARNETT and Bailey that were unconnected to any specific contracts or orders for supplies. These payments were in exchange for GARNETT and Bailey continuing to steer contracts and business to the vendors and their businesses.

**Facilitation into the AmEx Program**

20.     As the administrator of the AmEx Program, GARNETT approved businesses owned by MESERETU, McWhirter, and King to be vendors authorized to provide supplies to DCPS as part of the AmEx Program.

21.     In exchange for approval as vendors included in the AmEx Program, the vendors agreed to provide cash payments to GARNETT and to participate in the scheme to defraud DCPS perpetrated by GARNETT and Bailey.

## Overt Acts

22.     In furtherance of the conspiracy, and to effect its objects and purposes, GARNETT, together with Bailey and others, committed the following overt acts, among others, in the District of Columbia and elsewhere:

a.     On June 13, 2019, McWhirter paid GARNETT $1,000 via Cash App to induce her to continue steering contracts to his company.

### *September 2019 Purchase Card Transaction – MESERETU*

b.     On September 6, 2019, GARNETT and Bailey arranged for DCPS to purchase 75 cases of copy paper from MESERETU's company US Office for $2,624 through a purchase card transaction.

c.     On September 6, 2019, a purchase card charge with Transaction ID 2894796104001 was made to MESERETU's company US Office in the amount of $2,624.25. The transaction posted to MESERETU's bank account on September 9, 2019.

d.     MESERETU did not deliver 75 cases of copy paper to DCPS as required by the September 6, 2019, purchase card transaction.

7

e.      On September 9, 2019, the same day that the DCPS funds for the purchase card order posted to MESERETU's business's bank account, MESERETU withdrew $2,520 in cash for the purpose of providing cash to GARNETT and Bailey.

f.      The evening on September 9, 2019, GARNETT, MESERETU, and Bailey spoke on the phone to arrange the dates and times for MESERETU to provide a cash payment to GARNETT and Bailey.

g.      Soon thereafter, MESERETU paid Garnett and Bailey a portion of the cash he withdrew on September 9, 2019, in connection with the September 6, 2019, order for copy paper.

### September 2019 AmEx Program Transaction – McWhirter

h.      McWhirter sent invoice number 22513, dated September 25, 2019, from his company, General Merchandise, to DCPS. The invoice was for $3,000. The invoice indicated "Janitorial" under item description.

i.      McWhirter did not deliver any janitorial services to DCPS as described in invoice 22513.

j.      On September 26, 2019, McWhirter sent GARNETT by email a copy of invoice 22513.

k.      On September 26, 2019, GARNETT and Bailey approved the payment for invoice number 22513 as part of the AmEx Program and marked the invoice as paid.

l.      The same day, McWhirter withdrew $2,000 for the purpose of giving the cash to GARNETT and Bailey for their assistance ensuring he received payment for invoice 22513.

m.      On September 30, 2019, $3,000 in DCPS funds were wired to McWhirter's business's bank account.

8

n.      On September 26 and 27, 2019, GARNETT and McWhirter spoke on the phone to arrange the dates and times for McWhirter to provide the cash payment to GARNETT and Bailey.

o.      Soon thereafter, McWhirter paid GARNETT and Bailey at least $2,000 in cash.

### June 2020 Purchase Order Transaction – McWhirter

p.      On June 23, 2020, Bailey sent a text message to GARNETT that included a Cardozo purchase order number, 617401, and a dollar amount, $3,427.

q.      On the same day, GARNETT emailed McWhirter the purchase order number and told him that the order would be for $3,431.

r.      On June 24, 2020, McWhirter made three separate ATM withdrawals totaling $2,600 for the purpose of providing cash to GARNETT and Bailey.

s.      Between June 23, 2020, and June 27, 2020, GARNETT and McWhirter communicated by phone and text messages to arrange dates and times for McWhirter to provide the cash payment to GARNETT and Bailey.

t.      Soon thereafter, McWhirter provided a portion of the cash he withdrew to Bailey and GARNETT.

u.      On or about June 25, 2020, McWhirter's company received payment in full of $3,431 from DCPS.

### June 2020 Zelle Transfer – King

v.      On June 17, 2020, King transferred $3,000 via Zelle to an employee who worked at his business.

w.      On June 26, 2020, the same day King's employee received the $3,000 via Zelle, King's employee withdrew $3,000 from his bank account for the purpose of providing cash to GARNETT.

x.      Also on June 26, 2020, King's employee made multiple telephone calls to GARNETT to arrange the place and time to provide the cash payment to GARNETT, including a telephone call to GARNETT approximately twenty minutes after the time of the ATM withdrawal.

y.      King and his employee also exchanged text messages indicating that the $3,000 was transferred for the purpose of the employee delivering the $3,000 to GARNETT.

z.      Soon thereafter, King paid GARNETT $3,000 so that she would continue steering contracts to his company.

### *May 2021 US Office Supplies Bid on Contract – MESERETU*

aa.      On April 21, 2021, Bailey created a supply request associated with requisition number RK179322 in the DCPS contracting and procurement system and sent it to DCPS Central Office for review and approval. It was request for various custodial and office supplies for Cardozo High School.  It included 200 units of a certain type of trash bag/can liner and 100 units of a second type of trash bag/can liner.

bb.      On May 4, 2021, GARNETT emailed MESERETU a request for quote for the supplies listed on requisition number RK179322. As indicated in the email from GARNETT, the request for quote was due on May 6, 2021, at 2:00 PM.

cc.      On May 5, 2021, late at night, GARNETT and MESERETU, communicated using Signal, an end-to-end encrypted messaging system, for the purpose of coordinating the price at which MESERETU would win the bid to provide these supplies to DCPS.  They agreed that MESERETU would submit an inflated bid and deliver fewer goods than required.

dd.    MESERETU created a US Office quotation dated May 6, 2021, for the supplies listed in RK179322. The draft paperwork reflected a price of $20,653.20, that was crossed out and replaced with "$26,100." The quantity of 200 for the first type of trash bags was crossed out and replaced in handwriting with "150" and the quantity of 100 for the second type of trash bags was crossed out and replaced in handwriting with "25."

ee.    Later on May 6, 2021, GARNETT and MESERETU communicated using Signal.

ff.    On May 6, 2021, MESERETU finalized US Office's May 6, 2021, quotation for the supplies listed in RK179322 for the purpose of submitting it to DCPS and to GARNETT. The final quotation as submitted to DCPS by MESERETU listed the same goods and quantities as the draft MESERETU created, but with higher prices for each item and a total price of $26,050.45.

gg.    On May 7, 2021, GARNETT selected MESERETU's business as the winning bidder for the purchase of supplies worth $26,050.45 and verified that MESERETU's bid was reasonable without disclosing that she had told him what to bid.

hh.    On May 17, 2021, MESERETU withdrew $5,000 in cash for the purpose of providing cash to GARNETT and Bailey.

ii.    On or about May 20, 2021, MESERETU again withdrew $5,000 in cash, for the purpose of providing cash to GARNETT and Bailey.

jj.    On May 17 and May 20, 2021, MESERETU and GARNETT communicated using Signal to coordinate logistics of exchanging the cash payment.

kk.    On May 24, 2021, Bailey falsely certified that the full amount of requested goods had been provided to DCPS, when, in fact, it had not.

ll.     On June 4, 2021, the goods listed on the US Office quotation dated May 6, 2021, were delivered to Cardozo by US Office but in deficient quantities. For example, 50 trash bag liners of one type were actually delivered when 200 were expected, and 25 trash bag liners of a second type were actually delivered when 100 were expected.

mm.     On May 28, 2021, DCPS paid MESERETU's business $26,050.45 in satisfaction of this order.

nn.     Soon thereafter, MESERETU paid GARNETT cash for her arranging his winning bid for this transaction.

### June 2021 Purchase Card Transactions – MESERETU

oo.     On May 26 and June 1, 2021, Bailey made two purchase card charges, totaling $5,623, for supplies for an order to be fulfilled by MESERETU's business.

pp.     On June 11, 2021, Bailey text messaged MESERETU that she "needed 3 out of the 55," and "What's a good time tomorrow," which referred to a cash payment of $3,000 out of the $5,623 order for supplies from MESERETU.

qq.     The following day, a Saturday, MESERETU text messaged Bailey the address of his business in Washington, D.C. Bailey responded that she would "be there shortly." MESERETU responded to let him know when Bailey was "20 min away."

rr.     When Bailey arrived, MESERETU paid Bailey $3,000 in cash.

### February and May 2023 Recorded Bribes – MESERETU

ss.     On February 14, 2023, Bailey called MESERETU and claimed to have experienced a recent financial hardship. Bailey told MESERETU, in a call that was recorded, that she "need[ed] to buy some paper for the school and get some paper for" herself. During the call,

Bailey and MESERETU agreed to put in a copy paper order to allow MESERETU to pay Bailey $1,000, which he did.

        tt.      On February 17, 2023, Bailey met MESERETU at the business location of US Office in Washington D.C.  During the meeting, MESERETU gave Bailey $500 in cash concealed in a promotional catalog for US Office.

        uu.     On May 2, 2023, Bailey called MESERETU to arrange for the second $500 payment from MESERETU.

        vv.     On May 5, 2023, Bailey met MESERETU at the business location of US Office in Washington D.C. During the meeting, MESERETU gave Bailey an envelope that contained $500 in cash.

(All in violation of Title 18, United States Code, Section 371)

**COUNT TWO**
**(Bribery)**

23.     Paragraphs 1 to 8, 11 to 22 are incorporated herein.

24.     From June 11, 2019, to until at least August 2023, within the District of Columbia and elsewhere, the defendant,

**DANA GARNETT,**

being a public official, directly and indirectly, corruptly did demand, seek, receive, accept, and agree to receive and accept anything of value from McWhirter in return for (i) being influenced in the performance of an official act, (ii) being induced to do or omit to do any act in violation of GARNETT's láwful duty, and (iii) being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States.  That is, GARNETT demanded, sought, received, accepted, and agreed to accept money from McWhirter and in exchange GARNETT agreed to award DCPS business to General

13

Merchandise; to facilitate entry of General Merchandise into DCPS's American Express Buy-Down Program; and to commit fraud against United States by arranging for DCPS to pay for supplies ordered from General Merchandise that the company did not deliver to DCPS.

(All in violation of Title 18, United States Code, Sections 201(b)(2) & 2)

## COUNT THREE
### (Bribery)

25.     Paragraphs 1 to 8, 11 to 22 are incorporated herein.

26.     From June 11, 2019, to until at least August 2023, within the District of Columbia and elsewhere, the defendant,

### DANA GARNETT,

being a public official, directly and indirectly, corruptly did demand, seek, receive, accept, and agree to receive and accept anything of value from King in return for (i) being influenced in the performance of an official act, (ii) being induced to do or omit to do any act in violation of GARNETT's lawful duty, and (iii) for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States. That is, GARNETT demanded, sought, received, accepted, and agreed to accept money from King, and in exchange GARNETT agreed to award DCPS business to American Business, to facilitate entry of American Business into DCPS's American Express Buy-Down Program; and to commit fraud against DCPS by arranging for DCPS to pay for supplies ordered from American Business that the company did not deliver to DCPS.

(All in violation of Title 18, United States Code, Sections 201(b)(2) & 2)

## COUNT FOUR
### (Bribery)

27.     Paragraphs 1 to 8, 11 to 22 are incorporated herein.

14

28.     From June 11, 2019, to until at least August 2023, within the District of Columbia and elsewhere, the defendant,

**DANA GARNETT,**

being a public official, directly and indirectly, corruptly did demand, seek, receive, accept, and agree to receive and accept anything of value from MESERETU in return for (i) being influenced in the performance of an official act, (ii) being induced to do or omit to do any act in violation of GARNETT's lawful duty, and (iii) being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States. That is, GARNETT demanded, sought, received, accepted, and agreed to accept money from MESERETU and in exchange GARNETT agreed to award DCPS business to US Office; to facilitate entry of US Office into DCPS's American Express Buy-Down Program; and to commit fraud against DCPS by arranging for DCPS to pay for supplies ordered from US Office that the company did not deliver to DCPS.

(All in violation of Title 18, United States Code, Sections 201(b)(2) & 2)

### COUNT FIVE
### (Bribery)

29.     Paragraphs 1 to 8, 22(b) to 22(g), and 22(aa) to 22(vv) are incorporated herein.

30.     From September 9, 2019, to until at least May 5, 2023, within the District of Columbia and elsewhere, the defendant,

**YELAKE MESERETU,**

directly and indirectly, corruptly did give, offer, and promise anything of value to a public official with intent to (i) influence such public official in the performance of an official act; (ii) to induce such public official to do and omit to do an act in violation of the public official's lawful and official duty; and (iii) in return for being influenced to commit and aid in committing, and to

collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States; that is, MESERETU agreed to pay and paid GARNETT, a DCPS Contract Specialist, money to award business to US Office, facilitate entry of US Office into the American Express Buy Down Program, and colluded with and aided GARNETT in committing fraud against DCPS by arranging for DCPS to pay for supplies ordered from US Office that the company did not deliver to DCPS.

(All in violation of Title 18, United States Code, Section 201(b)(1) & 2)

## COUNT SIX
### (Bribery)

31.     Paragraphs 1 to 8, 22(b) to 22(g), and 22(aa) to 22(vv) are incorporated herein.

32.     From September 9, 2019, to until at least May 5, 2023, within the District of Columbia and elsewhere, the defendant,

### YELAKE MESERETU,

directly and indirectly, corruptly did give, offer, and promise anything of value to a public official with intent to (i) influence such public official in the performance of an official act; (ii) induce such public official to do and omit to do an act in violation of the public official's lawful and official duty; and (iii) in return for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States; that is, MESERETU agreed to pay and paid Bailey, a DCPS procurement official money, to award business to US Office, and colluded with and aided Bailey in committing fraud against DCPS by arranging for DCPS to pay for supplies ordered from US Office that the company did not deliver to DCPS.

(All in violation of Title 18, United States Code, Section 201(b)(1) & 2)

16

## COUNTS SEVEN TO THIRTEEN
### (Wire Fraud)

33.    Paragraphs 1 to 8 and 11 to 22 are incorporated herein.

34.    Beginning at least as early as June 11, 2019, and continuing until at least August 2023, in the District of Columbia and elsewhere, the defendant,

**DANA GARNETT,**

devised and intended to devise and participated in a scheme and artifice to defraud, for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to deprive the public of the honest services of GARNETT and Bailey through bribes and kickbacks and concealment of material information.

35.    On the following dates, for the purpose of executing such scheme and artifice, GARNETT transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds:

| COUNT | APPROXIMATE DATE OF WIRE COMMUNICATION | DESCRIPTION |
|---|---|---|
| 7 | June 13, 2019 | McWhirter payment of $1,000 via Cash App to GARNETT |
| 8 | September 26, 2019 | Email from McWhirter, on behalf of General Merchandise, to GARNETT regarding invoice number 22513 |
| 9 | June 23, 2020 | Email from GARNETT to McWhirter regarding purchase order number 617401 |
| 10 | June 26, 2020 | King payment of $3,000 via Zelle to his employee to pay GARNETT |
| 11 | September 9, 2019 | Purchase card charge payment to MESERETU with Transaction ID 2894796104001 |
| 12 | May 4, 2021 | Email from GARNETT to MESERETU regarding requisition number RK179322 |
| 13 | June 1, 2021 | Purchase card charge payment to MESERETU with Transaction ID 3256379804001 |

17

(All in violation of Title 18, United States Code, Sections 1343, 1346, & 2)

**COUNTS FOURTEEN TO SIXTEEN**
**(Wire Fraud)**

36.    Paragraphs 1 to 8, 22(b) to 22(g), and 22(aa) to 22(vv) are incorporated herein.

37.    Beginning at least as early as June 11, 2019, and continuing until at least August 2023, in the District of Columbia and elsewhere, the defendant,

**YELAKE MESERETU,**

devised and intended to devise and participated in a scheme and artifice to defraud, for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to deprive the public of the honest services of GARNETT and Bailey through bribes and kickbacks and concealment of material information.

38.    On the following dates, for the purpose of executing such scheme and artifice, MESERETU transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds:

| COUNT | APPROXIMATE DATE OF WIRE COMMUNICATION | DESCRIPTION |
|-------|------------------------------------------|-------------|
| 14 | September 9, 2019 | Purchase card charge payment to MESERETU with Transaction ID 2894796104001 |
| 15 | May 4, 2021 | Email from GARNETT to MESERETU regarding requisition number RK179322 |
| 16 | June 1, 2021 | Purchase card charge payment to MESERETU with Transaction ID 3256379804001 |

(All in violation of Title 18, United States Code, Sections 1343, 1346, & 2)

## **FORFEITURE ALLEGATION – GARNETT**

Upon conviction of the offense alleged in Counts 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, or 13 of this Indictment, defendant GARNETT shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p)).

## **FORFEITURE ALLEGATION – MESERETU**

Upon conviction of the offense alleged in Counts 5, 6, 14, 15, or 16 of this Indictment, defendant MESERETU shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p)).

A TRUE BILL

_____
Foreperson
Date:

_Matthew M. Groves/jpk_
MATTHEW M. GRAVES
United States Attorney
for the District of Columbia

20