IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.              ) | Case No. 24-CR-281-APM |
| ) | |
| YELAKE MESERETU,        ) | |
| ) | |
| Defendant.   ) | |

**YELAKE MESERETU'S OPPOSITION TO GOVERNMENT'S *MOTION IN LIMINE* CONCERNING EVIDENCE OF CERTAIN PRIOR MISCONDUCT**

Mr. Meseretu's trial is scheduled to begin on September 15, 2025. Indeed, the reason that Mr. Meseretu's trial is taking place in September as opposed to having already been tried in June as originally scheduled is because Mr. Meseretu graciously consented to the Government's request for a postponement of the trial date.

On August 20, 2025 – two months after Mr. Meseretu's original trial date, less than one month before the current trial date, and 208 days after the Court-imposed deadline to notify the defendant of its intention to introduce any Rule 404(b) evidence[1] – Government counsel informed Mr. Meseretu's counsel by email and letter that Government agents had interviewed another potential witness (the "new Witness") for the first time on August 8, 2025, about matters outside the scope of the indictment. The Government also provided a surreptitious recording of the new Witness's two-

---

[1] *See* ECF 35. While this Scheduling Order was in contemplation of the previously set June 2, 2025, trial date, no subsequent order by the Court has extended this deadline. Nor did the Government seek leave of the Court to file a 404(b) notice at this late juncture.  Mr. Meseretu has filed a separate motion *in limine* to exclude this evidence based on prejudice from this extremely late disclosure.

hour interview with FBI Agents and several excerpts of text messages the agents showed to the new Witness during that interview. That same day, August 20, 2025, undersigned counsel asked the Government whether it intended to call the new Witness at trial. On August 27, 2025, the Government informed undersigned counsel that they would file a motion *in limine* "laying out why we think that the information about [the new Witness] is proper under 404(b) and 608."

That motion *in limine* ("the Government's Motion") argues that the "new Witness" evidence is admissible on three independent grounds: (1) as intrinsic to – or direct proof of – the charged crimes; (2) under Federal Rule of Evidence 404(b) ("Other Crimes, Wrongs, or Acts") as showing a pattern, Mr. Meseretu's *modus operandi*, or absence of an accident or mistake; and (3) in the event that Mr. Meseretu testifies himself or calls a character witness to testify in his defense, to cross examine Mr. Meseretu or such character witness under Rule 608(b) ("A Witness's Character for Truthfulness or Untruthfulness").

As discussed below, the Court should not permit the Government to introduce this belatedly disclosed evidence for any reason. Whatever alleged dealings Mr. Meseretu had with the new Witness are not intrinsic to, or direct evidence of, the crimes charged in this case, which on their face relate only to Mr. Meseretu's dealing with Ms. Garnett and Ms. Bailey and a different DCPS school. The new Witness evidence is further inadmissible under Rule 404(b) because it has limited non-propensity probative value which is substantially outweighed by the risk of unfair prejudice and the significant danger of jury confusion that would arise from a "trial

within a trial." Finally, the new Witness evidence is inadmissible under Rule 608(b) because it has limited probative value as merely allegations (allegations that, if introduced at trial, will be hotly contested as they are contradicted by the new Witness's own statements to Government agents) and risks exposing the jury to incredibly prejudicial propensity evidence.

## ARGUMENT

I. **THE NEW WITNESS EVIDENCE IS NOT INTRINSIC EVIDENCE NOR SHOULD IT BE ALLOWED UNDER RULE 404(b) BECAUSE THE GOVERNMENT INTENDS TO INTRODUCE IT TO SHOW PROPENSITY AND ANY NON-PROPENSITY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE AND JURY CONFUSION**.

The Government's Motion first argues that the new Witness evidence should be admitted as substantive evidence in the Government's case-in-chief either (1) as intrinsic evidence or (2) under Rule 404(b).

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The rule reflects the principle that "a defendant must be tried for what he did, not for who he is." *United States v. Linares*, 367 F.3d 941, 945 (D.C. Cir. 2004) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)).

Because Rule 404(b) addresses other crimes, wrongs, or acts, "evidence that constitutes the very crime being prosecuted by definition is not barred by Rule 404(b) because it is not evidence of 'any *other* crime[.]'" *United States v. Abou-Khatwa*, 40 F.4th 666, 677 (D.C. Cir. 2022) (alteration accepted; internal citation and quotation

3

marks omitted) (emphasis in original) (quoting *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000) and Fed. R. Evid. 404(b)(1)). Thus, analysis under Rule 404(b) requires a threshold determination of whether the "acts [are] 'extrinsic' to the crime charged" and thus "subject to Rule 404(b)'s limitations," or instead are "'intrinsic' to the crime" and not covered by Rule 404(b)'s ban on propensity evidence. *Id*. (quoting *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (per curiam)) (brackets omitted).

The new Witness evidence is not intrinsic to the crimes charged in the indictment, nor should it be admitted under Rule 404(b).

### A. The New Witness Evidence is Not Intrinsic to the Charged Crimes.

An act is intrinsic to the charged conduct if it "(a) is part of the charged offense; (b) is offered as direct evidence of the charged crime; or (c) was performed contemporaneously with the charged crime and facilitated" it. *United States v. Roberson*, 581 F. Supp. 3d 65, 72 (D.D.C. 2022); *see also Abou-Khatwa*, 40 F.4th at 677. The new witness evidence is not intrinsic to Mr. Meseretu's charged crimes, because it does not fall into any of these three categories. Further, the D.C. Circuit has cautioned that evidence will not be considered "intrinsic" and thereby "circumvent[ ] Rule 404(b)" merely because it "complete[s] the story" or "explain[s] the events" surrounding the charged crime. *Bowie*, 232 F.3d at 929.

The charged offenses in this case involve a specific alleged bribery conspiracy involving only Mr. Meseretu, Ms. Garnett, and Ms. Bailey. Count One alleges:

4

> Beginning at least as early as August 1, 2018, and continuing through at least May 5, 2023, within the District of Columbia and elsewhere, the defendant,
>
> YELAKE MESERETU,
>
> ***together with co-conspirators Dana Garnett and Patricia Bailey***, did knowingly and unlawfully conspire, confederate, and agree with each other to commit an offense against the United States. . .

Indictment at Paragraph 8 (emphasis added).

Count Two alleges:

> From September 9, 2019, to until at least May 5, 2023, within the District of Columbia and elsewhere, the defendant,
>
> YELAKE MESERETU,
>
> directly and indirectly, corruptly did give, offer, and promise anything of value to a public official with intent to (i) influence such public official in the performance of an official act, (ii) to induce such public official to do and omit to do an act in violation of the public official's lawful and official duty, and (iii) in return for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity to commission of any fraud, on the United States; that is, MESERETU agreed to pay and ***paid GARNETT***, a DCPS Contract Specialist, money to award business to US Office, facilitate entry of US Office into the American Express Buy Down Program, and colluded with and ***aided GARNETT*** in committing fraud against DCPS by arranging for DCPS to pay for supplies ordered from US Office that the company did not deliver to DCPS.

*Id*. at paragraph 22 (emphasis added).

Count Three alleges:

> From September 9, 2019, to until at least May 5, 2023, within the District of Columbia and elsewhere, the defendant,
>
> YELAKE MESERETU,
>
> Directly and indirectly, corruptly did give, offer, and promise anything of value to a public official with intent to (i) influence such public official in the performance of an official act, (ii) to induce such public official to do and omit to do an act in violation of the public official's lawful and

official duty, and (iii) in return for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity to commission of any fraud, on the United States; that is, MESERETU agreed to pay and ***paid Bailey***, a DCPS procurement official money, to award business to US Office, and colluded with and ***aided Bailey*** in committing fraud against DCPS by arranging for DCPS to pay for supplies ordered from US Office that the company did not deliver to DCPS.

*Id*. at paragraph 24 (emphasis added).

Counts Four through Six allege:

Beginning at least as early as September 9, 2019, and continuing until at least May 5, 2023, in the District of Columbia and elsewhere, the defendant,

YELAKE MESERETU,

devised and intended to devise and participated in a scheme and artifice [1] to defraud, for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and [2] to deprive the public of the honest services ***of GARNETT and Bailey*** through bribes and kickbacks and concealment of material information. . . .

*Id*. at paragraph 26 (emphasis added).

These counts do not allege a broader conspiracy, or separate conspiracies, that could implicate other individuals and different DCPS schools. Evidence related to the new witness and a completely different DCPS school (a) are not part of the charged offense; (b) would not be direct evidence of the charged offense; and (c) did not facilitate the charged offense. As such, the new Witness evidence is clearly extrinsic to the charged crimes and must be analyzed under Rule 404(b).

6

### B. The New Witness Evidence has Limited Non-Propensity Probative Value, Any Non-Propensity Probative Value is Substantially Outweighed by the Risk of Unfair Prejudice and Would Confuse the Jury by Creating a "Trial Within a Trial.".

To determine whether Rule 404(b) evidence is admissible, there is a two-step inquiry. The first step is to determine whether "the evidence [is] probative of some material issue [in the case] other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994). And the second step is to determine whether that probative value is substantially outweighed by a risk of unfair prejudice and/or jury confusion (among other factors) under Rule 403. *Id*. *See United States v. Brown*, 597 F.3d 399, 406 (D.C. Cir. 2010) ("Rule 403 contemplates that other crimes and bad acts evidence properly admitted as relevant pursuant to Rule 404(b) may nonetheless be inadmissible because its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence'").

The Government first argues that the new Witness evidence is probative of Mr. Meseretu's "pattern or modus operandi—Meseretu targeted DCPS officials who could send business to his company and paid those officials with cash and other items in order to keep DCPS business flowing to his company." Government Motion at 5-6. This argument is simply window dressing propensity evidence. Paying "officials with cash and other items in order to keep DCPS business flowing to his company" is not a unique or distinctive pattern or modus operandi; it is a broad (and likely overly simplistic) description of literally any bribery scheme. What the Government's

7

argument boils down to is that if Mr. Meseretu paid bribes in the past, the jury should infer that he paid bribes here. This is exactly the kind of propensity evidence that Rule 404(b) expressly prohibits.

The Government next argues that it should be able to introduce the new witness evidence to "rebut[] any suggestion that Meseretu's payoffs were an accident or a mistake." Government Motion at 6. Any probative value the new witness evidence has for this purpose is slight (and drastically outweighed by the danger of unfair prejudice and jury confusion), because in substantial portions of her recorded interview the new Witness repeatedly denied the existence of any bribery *quid pro quo* scheme in her dealings with Mr. Meseretu.  The new Witness instead claimed that any gift she received from Mr. Meseretu was simply because they were friends and that there was no expectation that they owed each other anything or that the gifts were in exchange for business. Evidence that Mr. Meseretu allegedly gave gifts to a friend who happened to work for DCPS would not rebut a defense of accident or mistake with respect to the charged bribes. On the contrary, it would further support Mr. Meseretu's defense that any alleged cash payment by him was intended as a gift, not a bribe.[2]  The Government is seeking to present the new Witness evidence as inculpatory evidence of criminal propensity when the new Witness's actual account, viewed in its entirety, does not support that characterization. Introduction of this

---

[2] Such evidence is consistent with the Government's recordings of Mr. Meseretu gifting Ms. Bailey cash in February and May 2023 to help her buy a new washing machine when she explained that she was experiencing a difficult financial situation

8

extrinsic evidence will undoubtedly result in a confusing and distracting "trial within a trial" on whether the evidence, even if true, constitutes bribery.

The limited (if any) probative value of this evidence is substantially outweighed by the risk of unfair prejudice, including the risk that the jury will convict Mr. Meseretu based on the Government's incomplete characterization of the new Witness's account and the risk of confusing the jury with a "trial within a trial" on whether Mr. Meseretu bribed the new Witness.

II. **CROSS EXAMINATION ON THE NEW WITNESS EVIDENCE SHOULD NOT BE PERMITTED UNDER RULE 608(b) BECAUSE THERE IS NOT A SUBSTANTIAL LIKELIHOOD THAT THE ALLEGATIONS INVOLVE BRIBERY AND BECAUSE ANY PROBATIVE VALUE OF UNTRUTHFULNESS IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE.**

The Government next argues that "[t]o the extent that the defendant testifies or calls character witnesses, the Court should permit the government to inquire about the corrupt payments to [the new Witness] during its cross-examination of the defendant or any such character witness." Government Motion at 6.

Rule 608(b) governs the impeachment of a witness's character for truthfulness using specific instances of conduct that did not lead to a conviction. Cross examination on specific instances of conduct pursuant to Rule 608(b) is permissible *only* if the prior conduct is "probative of the character for truthfulness or untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b). The rule allows inquiry into specific instances of past conduct but expressly prohibits the use of extrinsic evidence. Fed. R. Evid. 608(b). In other words, the questioner is stuck with

9

the witness's answer. *See United States v. Whitmore*, 359 F.3d 609, 618 (D.C. Cir. 2004) (noting that under Fed. R. Evid. 608(b) "cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness'[s] denials" and that "[t]he purpose of this rule is to prohibit things from getting too far afield – to prevent the proverbial trial within a trial") (quoting *United States v. Bynum*, 3 F.3d 769, 722 (4th Cir. 1993)).

To avoid introducing unfounded accusations into the trial, "the questioner must be in possession of some facts which support a genuine belief that the witness committed the . . . act to which the question relates." *Whitmore*, 359 F.3d at 621-22 (internal quotation marks omitted). The specific instances of conduct must also not be substantially more prejudicial than probative under Rule 403.

Here, cross-examination of Mr. Meseretu or character witnesses regarding Mr. Meseretu's alleged conduct involving the new Witness has limited probative value with respect to his truthfulness because (1) the new Witness evidence consists merely of allegations by the Government and (2) the underlying extrinsic evidence, including the new Witness's own statements, does not support a genuine belief that Mr. Meseretu paid the new Witness a bribe at all. *United States v. Miller*, 738 F.3d 361, 376 (D.C. Cir. 2013) (finding that the probative value was diminished and the prejudice heightened because "the cross-examination would have been based on accusations, not a prior judicial finding [the witness] had lied"). As described above, in her Government interview the new Witness repeatedly denied the existence of a quid pro quo in connection with any of the gifts she allegedly received from Mr.

10

Meseretu. She further denied receiving any money at all from Mr. Meseretu related to the purchase of a Mercedes Benz in 2022. As such, the Government merely has its own allegations, and the extrinsic evidence (which is itself inadmissible under Rule 608(b)) does not support a genuine belief that Mr. Meseretu paid bribes to the new Witness.

The Government cites *Miller* to argue that "similarity" between the allegations in this case and the allegations involving the new Witness make inquiry into the alleged prior misconduct more probative of untruthfulness. *See* Government Motion 6-7 (citing Miller, 738 F.3d at 376). While some courts have considered this factor in determining whether a Rule 608(b) inquiry is probative of a witness's character for truthfulness, judges on this court have also noted that similarity to the charged crime can pose a risk of unfair prejudice from a jury using the evidence for an impermissible propensity purpose. *See United States v. Okafor*, Case No. 23-116 (JDB), 2024 WL 4263928, at *14 (D.D.C. Sept. 23, 2024) ("The potential prejudice, meanwhile, is slight, though not nonexistent. Because the proffered instances involved lying to authorities and not drug dealing, they bear only on the quality contemplated by the rule – untruthfulness – and do not pose much risk of infecting the jury's view of Okafor's propensity to commit the crimes charged here."). Unlike in *Okafor*, there is a clear and obvious risk that the "similarity" the Government claims to exist between the charged crimes and the new Witness evidence present a significant and unfair risk of introducing an unfair and prohibited propensity inference into the jury's evaluation of Mr. Meseretu's guilt or innocence of the charged crimes. The unfairness

11

of that risk is compounded by the fact that the Government's allegation of bribery is contradicted by the new Witness's own account.

### III. CONSIDERATIONS OF FAIRNESS AND EQUITY REQUIRE EXCLUSION OF THE NEW WITNESS EVIDENCE.

Finally, fundamental fairness and equity require that this new evidence be excluded. Back in December 2024, Mr. Meseretu's original trial date was scheduled for June 9, 2025. With that trial date in mind, the Court set a schedule for disclosures and motions. Under the Court's scheduling order, the Government was required to disclose any "404(b)" evidence no later than January 24, 2025.

Furthermore, the Government was aware of the existence of the new Witness in early May 2025 prior to Mr. Meseretu's original trial date. Yet, the Government and its agents apparently made no effort to interview the new Witness prior to Mr. Meseretu's June 9th trial date. Instead, on the eve of the June trial dates for Mr. Meseretu and Ms. Garnett (which were scheduled back-to-back), the Government made an urgent and emergency request to the Court to postpone the trial because of unexpected personal family issues facing one of the prosecutors. Mr. Mesretu, reasonably relying on the Court's existing schedule and deadlines and assuming the state of the evidence as it existed at the time would not change, graciously agreed to the Government's emergency motion for a postponement of the trial. Taking unfair advantage of Mr. Meseretu's willingness to postpone the trial date due to emergency family circumstances of one of the prosecutors, the Government waited ***another two months*** before contacting the new Witness, who appears to have had no hesitation in meeting with the FBI Agents. Moreover, the Government then waited ***another***

*two weeks* before advising Mr. Meseretu's counsel of the existence of the new Witness.

The Government should not now benefit from its own request for a postponement of trial (which had nothing to do with any professed need to conduct additional investigation), nor should Mr. Meseretu be prejudiced by his good faith agreement to a postponement as a matter of professional courtesy to Government counsel. To do so would violate fundamental principles of fairness and equity.

## CONCLUSION

For the foregoing reasons, the Court should exclude the new Witness evidence.

Respectfully submitted,

/s/ Noah Cherry
David Schertler (No. 367203)
Noah Cherry (No. 1742964)
Schertler Onorato Mead & Sears, LLP.
555 13th Street, N.W., Suite 500 West
Washington, D.C. 20004
Telephone: (202) 628-4199
dschertler@schertlerlaw.com
ncherry@schertlerlaw.com

*Counsel for Yelake Meseretu*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 6th day of September 2025, a true and correct copy of the foregoing was electronically filed and served on counsel for the United States and Ms. Garnett through ECF.

*/s/Noah Cherry*
